### UNITED STATES v. HOKE et al.

#### (District Court, E. D. Texas. April 6, 1911.)

1. COMMERCE (§ 5*)—INTERSTATE COMMERCE—CONGRESSIONAL POWER—"NECESSARY AND PROPER."

The words "necessary and proper," as used in the provision of the federal Constitution declaring that Congress shall have power to pass all laws which are "necessary and proper" for carrying into execution the power to regulate commerce between the states, etc., do not imply the employment of only such means as are absolutely necessary to effect the object sought, but include as well all the means which in the judgment of Congress may be proper to carry out the power so granted.

[Ed. Note.—For other cases, see Commerce. Cent. Dig. §§ 3, 5; Dec. Dig. § 5.*

For other definitions, see Words and Phrases, vol. 5, pp. 4710–4712.]

2. COMMERCE (§ 47*)—REGULATION—SCOPE.

The power to regulate commerce between the states and with foreign countries conferred on Congress by the federal Constitution includes the power to regulate the transportation of persons.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 26; Dec. Dig. § 47.*

For other definitions, see Words and Phrases, vol. 2, pp. 1287–1298; vol. 8, pp. 7606, 7607.]

3. COMMERCE (§ 5*)—INTERSTATE COMMERCE—"REGULATE COMMERCE"—PROHIBITION.

The constitutional power of Congress to regulate interstate and foreign commerce also involves the power, not only to prescribe rules for the carrying on such commerce, but also in certain instances to absolutely prohibit it.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 3, 5; Dec. Dig. § 5.*

For other definitions, see Words and Phrases, vol. 7, pp. 6047–6049; vol. 8, p. 7782.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. COMMERCE (§ 47*)—INTERSTATE COMMERCE—TRANSPORTATION OF WOMEN FOR IMMORAL PURPOSES—CONSTITUTIONAL PROVISIONS "REGULATE COMMERCE."
Act Cong. June 25, 1910, c. 395, 36 Stat. 825, making it a felony to furnish transportation, or to persuade, entice, or induce a woman or girl to go, from one state to another as a passenger in interstate commerce for prostitution or debauchery, where the furnishing of such transportation or the inducement, persuasion, or enticement is followed by the woman being actually transported in interstate commerce for such purpose, is a proper exercise of the constitutional power of Congress to regulate commerce between the states, and is not unconstitutional as an infringement of the police power of the states.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 47.*]

Effie Hoke and another were indicted for alleged violation of Act Cong. June 25, 1910, c. 395, 36 Stat. 825, prohibiting the furnishing of transportation for or the persuading, enticing, or inducing of a woman to go from one state to another as a passenger in interstate commerce for immoral purposes. On demurrer to the indictment. Overruled.

Blain & Howth (W. R. Blain and Clarence.W. Howth, of counsel), for Effie Hoke.

Greers & Nall and Chandler C. Luzenberg, for Bosile Economides.

RUSSELL, District Judge. The indictment under consideration was drawn under the act of June 25, 1910, c. 395, 36 Stat. 825, which sought to make it a felony to furnish transportation or to persuade, entice, or induce a woman or girl to go from one state to another as a passenger in interstate commerce for the purpose of prostitution or debauchery, where the furnishing of such transportation or the inducement, persuasion, or enticement aforesaid is followed by the woman actually being transported in interstate commerce for the purpose of prostitution or debauchery.

[4] The demurrers of the defendants in this case assailed the sufficiency of the indictment, among other reasons, upon the ground that the act of Congress under which the indictment was drawn was an unconstitutional exercise of power. It is contended by defendants that no power was granted to Congress by the Constitution to enact legislation of the character in question, and this contention brings sharply before the court the duty of deciding whether the act of June 25, 1910, is constitutional.

The power of Congress to pass this legislation must be found in two articles of the federal Constitution:

"Congress shall have power * * * to regulate commerce with foreign nations, and among the several states, and with the Indian tribes. * * *"

"Congress shall have the power to pass all laws which are necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this Constitution in the government of the United States or in any department thereof." Article 1, § 8.

Upon these two clauses of the Constitution must depend the power of Congress to pass the act under which the indictment in this case was drawn.

[1] The courts have repeatedly held that in the last clause of the Constitution, which I have quoted, and which some of the law writers call "the great coefficient power" of Congress, that the term "necessary and proper" does not imply the employment of only such means as are absolutely necessary to effect the object sought, but that the term includes all the means which in the judgment of Congress may be proper to carry out a power which the Constitution has granted to Congress. This idea was aptly expressed by Chief Justice Marshall in the opinion in the case of McCulloch v. Maryland, 4 Wheat. 421, 4 L. Ed. 579, where he says:

> "We all admit, as all must admit, that the powers of the government are limited, and that its limits are not to be transcended. But we think the sound construction must allow to the national Legislature that discretion, with respect to the means by which the powers it confers are to be carried into execution, which will enable that body to perform the high duties assigned to it in the manner most beneficial to the people. Let the end be legitimate, let it be within the scope of the Constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the Constitution, are constitutional."

It will very greatly aid us in understanding the question we are considering to ascertain what was meant by this power "to regulate commerce among the states." It is a very simple expression, and no definition is attempted. In a very early case the Supreme Court said that the government created by the Constitution was one "of enumeration and not of definition." So we must look to the decisions of the courts to ascertain the extent of the powers vested in Congress by the Constitution. The case of Gibbons v. Ogden, 9 Wheat. 1, 6 L. Ed. 23, is familiar to every man who has read law. It was one of early cases where the great Chief Justice announced the extent of the power granted to Congress in the language I have read, giving us the power to regulate commerce. He said:

> "We have now arrived at the inquiry, What is this power? It is the power to regulate—that is, to prescribe the rule by which commerce is to be governed. This power, like all others vested in Congress, is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations other than are prescribed in the Constitution. * * * If, as has always been understood, the sovereignty of Congress, though limited to specified objects, is plenary as to those objects, the power over commerce with foreign nations and among the several states is vested in Congress as absolutely as it would be in a single government having in its constitution the same restrictions on the exercise of the power as are found in the Constitution of the United States."

In the case of Gloucester Ferry Company v. Pennsylvania, 114 U. S. 196, 5 Sup. Ct. 826, 29 L. Ed. 158, it was held that the power to regulate commerce vested in Congress is the power to prescribe the rule by which it shall be governed—that is, the conditions upon which it shall be conducted, and to determine when it shall be free and when subject to duties or other exactions.

In giving these general definitions and before going to a closer discussion of the principles of law involved in this bill of indictment, I

invite attention to the law as announced by the Supreme Court of the United States in the Northern Securities Case, reported in 193 U. S. 197, 24 Sup. Ct. 436, 48 L. Ed. 679. The court in that case again announced the doctrine that the power of Congress over interstate commerce is as full and free as the power of the several states is over their domestic commerce, subject only to the restrictions contained in the Constitution of the United States. Who doubts the power of a state, exercising its authority over domestic commerce, to prohibit the transportation or the buying of a ticket for the transportation of a woman from one point to another in the state for the purpose of debauchery or prostitution? Who doubts the power of Congress to enact that kind of legislation where it is confined solely to the territories and to the District of Columbia? Yet in the cases I have referred to, from the case of Gibbons v. Ogden to the Northern Securities Case, 193 U. S. 197, 24 Sup. Ct. 436, 48 L. Ed. 679, the unbroken line of opinion has been that the power of Congress over interstate commerce is as complete as the power of the state over intrastate commerce. If we concede this doctrine, then there is no escape from the conclusion that Congress had the power to enact the legislation in question. To my mind the solution of this question is very simple. It turns upon the determination of two plain propositions. Those two propositions are: First. Is the transportation of persons commerce within our constitutional provisions? Second. Has Congress, under its regulatory powers, the right in any case to prohibit commerce between the States?

[2] As to the first proposition, I take it there can be but little, if any, dispute, because the United States Supreme Court has held in a large number of cases that in the power to regulate commerce was included the power to regulate the transportation of persons. I cite the case of Gloucester Ferry Company v. Pennsylvania, and will quote a short extract found on page 203 of 114 U. S., on page 828 of 5 Sup. Ct. (29 L. Ed. 158), containing the opinion. The court says:

"It matters not that the transportation is made in ferryboats, which pass between the states every hour of the day. The means of transportation of persons and freight between the states does not change the character of the business as one of commerce, nor does the time within which the distance between the states may be traversed. Commerce among the states consists of intercourse and traffic between their citizens, and includes the transportation of persons and property, and the navigation of public waters for that purpose, as well as the purchase, sale, and exchange of commodities. The power to regulate that commerce as well as commerce with foreign nations vested in Congress is the power to prescribe the rules by which it shall be governed; that is, the conditions upon which it shall be conducted, to determine when it shall be free and when subject to duties or other exactions. The power also embraces within its control all the instrumentalities by which commerce may be carried on, and the means by which it may be aided and encouraged. The subjects, therefore, upon which the power may be exerted, are of infinite variety. While, with reference to some of them, which are local and limited in their nature or sphere of operation, the states may prescribe regulations until Congress intervenes and assumes control of them, yet when they are national in their character, and require uniformity of regulation affecting alike all the states, the power of Congress is exclusive. Necessarily that power alone can prescribe regulations which are to govern the whole country. And it needs no argument to show that the commerce with foreign nations and between the states, which consists in the transpor-

tation of persons and property between them, is a subject of national character, and requires uniformity of regulation."

The opinion in the Gloucester Ferry Company Case has been followed by an unbroken line of decisions since that time. For instance, it is followed in the passenger cases, reported in 7 How. 283, 12 L. Ed. 702, and it is reaffirmed in the case of Pickard v. Pullman Car Company, in 117 U. S. 34; 6 Sup. Ct. 635, 29 L. Ed. 785. The doctrine is again laid down in the case of Covington Bridge Company v. Kentucky. In that case, reported in 154 U. S. 204, 14 Sup. Ct. 1087, 38 L. Ed. 962, the court says:

"The real question involved here is whether this case can be distinguished from the Wabash Case [118 U. S. 557, 7 Sup. Ct. 4, 30 L. Ed. 244]. That involved the right of a single state to fix the charge for transportation from the interior of such state to places in other states. This case involved the right of one state to fix charges of transportation of persons and property over a bridge connecting it with another state without the consent of Congress or such other state, and this involved the further inquiry: First, whether such traffic across the river is interstate commerce; and, second, whether a bridge can be considered an instrument of such commerce."

So we see that the question was fairly presented as to whether the transportation of persons from state to state was interstate commerce. The court proceeds:

"The first question must be answered in the affirmative upon the authority of Gloucester Ferry Company v. Pennsylvania (114 U. S. 196 [5 Sup. Ct. 826, 29 L. Ed. 158]), in which the state of Pennsylvania attempted to tax the capital stock of a corporation whose entire business consisted in ferrying passengers and freight over the river Delaware between Philadelphia, in Pennsylvania, and Gloucester, in New Jersey, and this traffic was held to be interstate commerce, and, inasmuch as it appeared that the ferryboats are registered in New Jersey and were taxable there, it was held that there was no property held by the company which could be the subject of taxation in Pennsylvania, except the lease of a wharf in that state."

These cases can be multiplied. No case holding to the contrary can be found, unless it be the case of Mayor, etc., v. Miln, reported in 33 U. S. 120, 8 L. Ed. 888, and the Miln Case on the point under discussion had been overruled in the passenger cases, in 7 How. 283, 12 L. Ed. 702, and the decision in the passenger cases has been subsequently followed by all the opinions in which the subject was discussed. Upon what principle can the regulation of interstate commerce be applied to the transportation of property and withheld from the transportation of persons? Upon what principle does the anti-free pass legislation embraced in the Hepburn act (Act June 29, 1906, c. 3591, 34 Stat. 584 [U. S. Comp. St. Supp. 1909, p. 1149]) rest if not upon the power to regulate commerce? What constitutional warrant can be found for the bills introduced in Congress to regulate the fares for persons traveling from state to state unless the transportation of persons be interstate commerce? I do not believe any legal question is better settled, both upon reason and authority, than that the interstate transportation of persons comes within the power of Congress contained in the commerce clause of the Constitution.

[3] But this brings us to the consideration of a far more serious

question involved in this legislation, and that is whether Congress has the power in the exercise of its constitutional authority to prohibit interstate commerce in any case. If I can bring here a series of decisions by our federal courts in which that question was fairly presented, and in which the courts have passed upon it, then certainly that feature of the law under discussion will be disposed of. Before calling attention to these cases, I desire once more to call to mind the general principles which the Supreme Court has laid down for the construction of the power of Congress over interstate commerce. It has been held that the power of Congress in this regard is plenary; that it has no limitations except such as are contained in the Constitution; that it is exclusive; that it is as full and complete as the power of the states over domestic commerce. It has been held that the power to regulate interstate commerce means the power to prescribe the rules upon which it shall be conducted—that is, when it shall be free and when it shall be subject to such restrictions as Congress may see fit to attach to it. These general principles are well established, and no case can be found in which they are called in question, and it is very important to bear them in mind in considering the power of Congress to pass the act of June 25, 1910. Now, let us go to some of the adjudicated cases. I first call attention in support of the position that Congress, in the exercise of the regulatory power, may in some instances prohibit interstate commerce, to the Rahrer Case, reported in 140 U. S. 545, 11 Sup. Ct. 865, 35 L. Ed. 572. That case involved this state of facts: Maynard and Hopkins were citizens of the state of Missouri, and were engaged in the wholesale liquor business in Kansas City, in that state. They appointed Charles Rahrer, a citizen of the United States, their agent to dispose of certain intoxicating liquors in their original packages and shipped from the state of Missouri into the state of Kansas in such original packages. Rahrer, as the agent of Maynard & Hopkins, did sell and offer for sale certain liquors shipped to him as such agent by Maynard & Hopkins. The liquors so offered for sale and sold by Rahrer were in the original packages. At the time of these sales the state of Kansas had provided, both by constitutional provision and by statutory enactment that the sale of intoxicating liquors should be prohibited in that state. The state authorities prosecuted Rahrer for making the sale. Prior to the sale Congress enacted:

"That all fermented, distilled, or other intoxicating liquors or liquids transported into any state or territory, or remaining therein for use, consumption, sale or storage therein, shall, upon arrival in such state or territory, be subject to the operation and effect of the laws of such state or territory enacted in the exercise of its police powers to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise." Act Aug. 8, 1890, c. 728, 26 Stat. 313 (U. S. Comp. St. 1901, p. 3177).

If this act of Congress was a valid exercise of power, then it amounted to a prohibition of interstate commerce so far as the shipment of liquors from the state of Missouri to the state of Kansas was

concerned. In other words, the Rahrer Case fairly presented the question: Can Congress in any case prohibit interstate commerce? The case was elaborately argued, and Chief Justice Fuller delivered the opinion of the court, in which he extensively reviewed the authorities bearing upon the question. In announcing the conclusion of the court he said in part:

"In other words, it is earnestly contended that the Constitution guarantees freedom of commerce among the states in all things, and that not only may intoxicating liquors be imported from one state to another without being subject to regulation under the laws of the latter, but that Congress is powerless to obviate that result. Thus the grant to the general government of a power designed to prevent embarrassing restrictions upon interstate commerce by any state would be made to forbid any restraint whatever. We do not concur in this view. In surrendering their power over interstate commerce the states did not secure absolute freedom in such commerce, but only the protection from encroachment afforded by confining its regulation exclusively to Congress. By the adoption of the Constitution the ability of the several states to act upon the matter solely in accordance with their own will was extinguished and the legislative will of the general government substituted. No affirmative guaranty was thereby given to any state of the right to demand as between it and the others what it could not have obtained before, while the object was undoubtedly sought to be attained of preventing commercial regulations partial in their character or contrary to the common interests. * * * But this furnishes no support to the position that Congress could not, in the exercise of the discretion reposed in it, concluding that the common interests did not require entire freedom in the traffic in ardent spirits, enact the law in question. In doing so Congress has not attempted to delegate the power to regulate commerce or to exercise any power reserved to the states or to grant a power not possessed by the states or to adopt state laws. It has taken its own course and made its own regulation, applying to these subjects of interstate commerce one common rule, whose uniformity is not affected by variations in state laws in dealing with such property."

In the Rahrer Case the court upheld the validity of the act of Congress I have mentioned, and which was a prohibition of interstate commerce. The question was directly presented, and the contention I am making in support of this law was sustained. If the Rahrer Case is good law, it furnishes an instance of where Congress in exercising the power to regulate commerce prohibited it. It necessarily would follow that Congress would have the power if the Supreme Court of the United States was correct in announcing the doctrine they have unequivocally announced when they said that the power of Congress over interstate commerce was as plenary as was the power of the states over domestic commerce.

A case cannot be found in any of the books where the states have ever attempted to exercise the powers which are attempted to be conferred by this law. This law does not prohibit the keeping of houses of prostitution within the states. It does not seek to punish acts of prostitution within the states. It does not invade the power of the states in any particular. It does not conflict with any state statute which can possibly be lawfully passed; but if a state, in the exercise of its wisdom, sees fit to prohibit acts of prostitution and the keeping of bawdyhouses, this legislation by Congress will be but supplementary of and helpful to the perfect execution of those state statutes.

That is all. What state would claim the right to regulate commerce between the states? What state would claim the right to license prostitution within the states? The only power which they can exercise is to prohibit these evils within their state lines. When the states do seek to prohibit immoralities of this kind, this legislation but comes to their aid, and does not transcend the constitutional powers of Congress.

Now, I would invite attention to another decision upon the point that Congress in the exercise of its regulatory power can in some instances prohibit interstate commerce. I will quote from the Addyston Pipe Case reported in 175 U. S. on page 226, 20 Sup. Ct. on page 102 (44 L. Ed. 136). That case affirmed the opinion of Circuit Judge Taft. I quote the following language:

"Assuming for the purpose of the argument that the contract in question herein does directly and substantially operate as a restraint upon and as a regulation of interstate commerce, it is yet insisted by the appellants at the threshold of the inquiry that by the true construction of the Constitution the power of Congress to regulate interstate commerce is limited to its protection from acts of interference by state legislation or by means of regulations made under the authority of the state by some political subdivision thereof, including also congressional power over common carriers, elevator, gas, and water companies, but that it does not include the general power to interfere with or prohibit private contracts between citizens, even though such contracts have interstate commerce for their object, and result in a direct and substantial obstruction to or regulation of that commerce."

Now, then, I have quoted that much from the opinion for the purpose of showing that the question I am endeavoring to discuss was fairly presented by the facts of that case. Here was an instance of the passage by Congress of a law attempting to prohibit the making of certain private contracts between citizens which affected interstate commerce. The question presented was, Has Congress under its regulatory power the right to levy such a prohibition against the making of such private contracts?

The court proceeded to say:

"This argument is founded upon the assertion that the reason for vesting in Congress the power to regulate commerce was to insure uniformity of regulation against conflicting and discriminating state legislation, and the further assertion that the Constitution guarantees liberty of private contract to the citizen at least upon commercial subjects, and to that extent the guaranty operates as a limitation on the power of Congress to regulate commerce."

The court further says:

"The reasons which may have caused the framers of the Constitution to repose the power to regulate interstate commerce in Congress do not, however, affect or limit the extent of the power itself. * * * Under this grant of power to Congress, that body, in our judgment, may enact such legislation as shall declare void and prohibit performance of any contract between individuals or corporations where the natural and direct effect of such a contract will be, when carried out, to directly, and not as a mere incident to other and innocent purposes, regulate to any substantial extent interstate commerce. (And when we speak of interstate we also include in our meaning foreign commerce.) We do not assent to the correctness of the proposition that the constitutional guaranty of liberty to the individual to enter into private contracts limits the power of Congress and prevents it from legislating upon the subject of contracts of the class mentioned."

The court in this Addyston Pipe Case adhered to the doctrine laid down in the Rahrer Case, that in the exercise of the power to regulate commerce between the states Congress ·may when in its judgment the common interests of all the states require it lay an embargo against certain kinds of commerce.

I want to call attention to the case of United States v. Popper, re-ported in (D. C.) 98 Fed. 423. That case involved the constitutionality of the act of February 8, 1897 (Act Feb. 8, 1897, c. 172, 29 Stat. 512 [U. S. Comp. St. 1901, p. 3180]). By that act Congress prohibited the carrying of obscene literature and articles designed for indecent or immoral use from one state to another. The defendant in the Popper Case assailed that law upon the ground that in enacting it Congress was not exercising a valid power, but that the act in question was within the police powers of the states.

In the opinion the court says:

"Congress is given power by section 8 of article 1. of the Constitution 'to regulate commerce with foreign nations, and among the several states and with the Indian tribes.' This is a sovereign power, and I have no doubt that under it Congress is authorized to forbid, as it has done in the provision ·of the act above quoted, interstate commerce in such articles as are named therein. The power to regulate commerce includes the power to declare what property or things may be the subject of commerce."

Now, I call attention again to the fact that in all the cases in which this regulation of commerce is discussed the courts have said that regulation of the transportation of persons rests upon the same footing as the transportation of property. I quote further from the opinion in the Popper Case:

"The provision of the act of February 8, 1897 (29 Stat. 512), making it unlawful for any person to deposit with an express company or other common carrier, for carriage from one state or territory to another, any article or thing designed or intended for the prevention of conception is not unconstitutional, on the ground that it is a police regulation, and, as such, a matter over which the states have exclusive jurisdiction, but it is within the constitutional powers of Congress to regulate interstate commerce."

In this case the question was clearly presented as far as an article or piece of property was concerned in construing the clause to regulate interstate commerce. The question was, Did Congress have the power to prohibit it in any instance? The court in the case I have just cited held that the prohibition in that character of case was perfectly lawful and constitutional. Why, this law does not attempt to prohibit the transportation of women between the states. It does not try to prohibit the transportation of women of ill repute between the states; but it does say that no citizen of these states shall be permitted, without incurring penalties, to buy a ticket or to assist in the transportation of a woman or girl from one state to another when his purpose in having her make the journey is to have her engage in prostitution, debauchery, or some other immoral practice. That is all this law attempts to do. How, in the name of common sense, does that invade any of the rights of the states, or any of the police powers of the states? I ask again the question, Is there a state in the Union that could pass

this legislation? In the Lottery Cases the Supreme Court said that was the test—could the states pass such legislation? Is there a state that could enact legislation like this? To ask the question is to get the negative answer. Then the only jurisdiction that can enact it is the Congress of the United States, and it is clearly within the power granted by the Constitution to Congress to regulate the commerce among the states.

Now, let us see what the Lottery Case, 188 U. S. 321, 23 Sup. Ct. 321, 47 L. Ed. 492, decides: The decision is well considered, extensive, deliberate, and discusses every phase of the question involved here. The question before the court was the constitutionality of the act of March 2, 1895 (Act March 2, 1895, c. 191, 28 Stat. 963 [U. S. Comp. St. 1901, p. 3178]), entitled:

"An act for the suppression of lottery traffic through national and interstate commerce and the postal service, subject to the jurisdiction and laws of the United States."

This act was assailed upon the grounds that it was unconstitutional because it was an invasion and interference with the police powers and reserved rights of the states. In the opinion the court says:

"The appellant insists that the carrying of lottery tickets from one state to another by an express company engaged in carrying packages from state to state, although such tickets may be contained in a box or package, does not constitute, and cannot by an act of Congress be legally made to constitute, commerce among the states. * * * The government insists that express companies when engaged for hire in the business of transportation from one state to another are instrumentalities of commerce among the states; that the carrying of lottery tickets from one state to another is commerce which Congress may regulate; and that as a means of exercising the power to regulate interstate commerce Congress may make it an offense against the United States to cause lottery tickets to be carried from one state to another."

Again, in stating what was the question at issue, the court says:

"But it is said that the statute in question does not regulate the carrying of lottery tickets from state to state, but by punishing those who cause them to be so carried Congress, in effect, prohibits such carrying; that in respect of the carrying from one state to another of articles or things that are, in fact, or according to usage in business, the subjects of commerce, the authority given to Congress is not to prohibit, but only to regulate."

These extracts from the opinion of the court stating the questions involved in that decision show that the Lottery Case is directly in point in this discussion. The only possible difference is that in the Lottery Case the court was considering a statute which prohibited the carrying of things in interstate commerce, while this law prohibits the transportation of women or girls with a view to their debauchery or for the purpose of having them engage in prostitution. In this connection let me say again that the United States Supreme Court has settled it beyond debate that the interstate transportation of persons and the interstate transportation of things rests upon the same power of Congress; that the power of Congress to regulate each of them is identical both as to its source and its extent. It follows, therefore, that, if Congress can prohibit the interstate transportation of things

because the common interests require it, Congress may also prohibit the interstate transportation of women and girls for immoral purposes if, in the judgment of Congress, the common interests require it. The court sustained the constitutionality of the statute in the Lottery Case and upheld the right of Congress to prohibit in that case. In that opinion the court says:

"We have said that the carrying from state to state of lottery tickets constitutes interstate commerce, and that the regulation of such commerce is within the power of Congress under the Constitution. Are we prepared to say that a provision which is, in effect, a prohibition of the carriage of such articles from state to state is not a fit or appropriate mode for the regulation of that particular kind of commerce? If lottery traffic carried on through interstate commerce is a matter of which Congress may take cognizance and over which its power may be exerted, can it be possible that it must tolerate the traffic, and simply regulate the manner in which it may be carried on? Or may not Congress, for the protection of the people of all the states, and under the power to regulate interstate commerce, devise such means, within the scope of the Constitution, and not prohibited by it, as will drive the traffic out of commerce among the states."

I pause here long enough to ask that if the right to regulate the interstate transportation of things and of persons has the same source and the same extent, and if Congress, under that power, can legally drive the lottery traffic out of commerce among the states, has not Congress the power to drive out of commerce among the states the traffic in white women and girls for immoral purposes? But the opinion proceeds:

"If a state, when considering legislation for the suppression of lotteries, within its own limits, may properly take into view the evils that inhere in the raising of money in that mode, why may not Congress, invested with the power to regulate commerce among the several states, provide that such commerce shall not be polluted by the carrying of lottery tickets from one state to another?"

Let me transpose this language and apply it to the law now under consideration. If a state when considering legislation for the suppression of prostitution within its own limits may properly take into view the evils that inhere in that degrading vice, why may not Congress, invested with the power to regulate commerce among the several states, provide that such commerce shall not be polluted by allowing the white slaver to transport women and girls from one state to another for the purpose of prostitution and debauchery? The court says further in this connection:

"In this connection it must not be forgotten that the power of Congress to regulate commerce among the states is plenary, is complete in itself, and is subject to no limitations, except such as may be found in the Constitution. What provision in that instrument can be regarded as limiting the exercise of the power granted? What clause can be cited which in any degree countenances the suggestion that one may of right carry or cause to be carried from one state to another that which will harm the public morals?

These inquiries of the court in the Lottery Case fit the law now before us. Under what clause of our Constitution can a vile procurer claim the right to carry from state to state his pitiful victims in order

that he may compel them, for his profit, to engage in acts of prostitution and debauchery?

The court then turns attention to the complaint that the act for the suppression of lotteries was an invasion of the reserved rights of the states with this language:

"If it be said that the act of 1895 is inconsistent with the tenth amendment, reserving to the states, respectively, or to the people, the powers not delegated to the United States, the answer is that the power to regulate commerce among the states has been expressly delegated to Congress. Besides, Congress, by that act, does not assume to interfere with traffic or commerce in lottery tickets carried on exclusively within the limits of any state, but has in view only commerce of that kind among the several states. It has not assumed to interfere with the completely internal affairs of any state, and has legislated only in respect of the matter which concerns the people or the United States. As a state may, for the purpose of guarding the morals of its own people, forbid all sales of lottery tickets within its limits, so Congress, for the purpose of guarding the people of the United States against the 'widespread pestilence of lotteries' and to protect the commerce which concerns all the states, may prohibit the carrying of lottery tickets from one state to another. In legislating upon the subject of the traffic in lottery tickets, as carried on through interstate commerce, Congress only supplemented the action of those states—perhaps all of them—which, for the protection of the public morals, prohibit the drawing of lotteries, as well as the sale or circulation of lottery tickets, within their respective limits."

How well does this language from the opinion of the court apply to this law. Let me transpose the words of the judge again: As a state may, for the purpose of guarding the morals of its own people, forbid all acts of immorality within its limits, so Congress, for the purpose of guarding the people of the United States against the widespread pestilence of prostitution, and to protect the commerce which concerns the people of all the states, may prohibit the carrying of women and girls from one state to another for the purpose of placing them in houses of ill fame. If the logic of the judge who delivered the opinion in the Lottery Case is correct, and if the power to regulate the transportation of persons is the same as the power to regulate the transportation of things, then how can the power of Congress to pass this law be denied?

I invite attention before leaving this legal phase of the question to the following instances where, under the exercise of the regulatory power, Congress has prohibited commerce between the states. In the first place, the act of May 29, 1884 (Act May 29, 1884, c. 60, 23 Stat. 31 [U. S. Comp. St. 1901, p. 299]), prohibited the transportation in interstate commerce of any live stock affected with any contagious, infectious, or communicable disease, and that act was held to be constitutional in the case of Reid v. Colorado, 187 U. S. 137, 23 Sup. Ct. 92, 47 L. Ed. 108.

The anti-trust act of 1890 (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]) is based on the power of Congress to regulate commerce, and that act prohibited the making of certain contracts and declared them to be illegal. That anti-trust act has been held to be constitutional in a number of cases, and declared to be a constitutional exercise by Congress of the regulatory power, and not-

ably in the case of the United States v. Joint Traffic Association, reported in 171 U. S. 505, 19 Sup. Ct. 25, 43 L. Ed. 259. The act of July 1, 1902 (Act July 1, 1902, c. 1357, 32 Stat. 632 [U. S. Comp. St. Supp. 1909, p. 1182]), prohibits the introduction from state to state of dairy products which have been falsely branded or labeled. The pure food law (Act June 30, 1906, c. 3915, 34 Stat. 768 [U. S. Comp. St. Supp. 1909, p. 1187]) was based on the power of Congress to regulate commerce among the several states. The act of February 21, 1905 (Act Feb. 21, 1905, c. 720, 33 Stat. 732 [U. S. Comp. St. Supp. 1909, p. 1204]), prohibits the transportation in interstate commerce of gold and silver goods with the words "United States assay" on them. Nobody is trying to overturn that law. The act of March 3, 1905 (Act March 3, 1905, c. 1501, 33 Stat. 1269 [U. S. Comp. St. Supp. 1909, p. 1176]), prohibits the transportation in interstate commerce of certain insects that were supposed to help distribute the boll weevil. Nobody is trying to overturn that law. I might go ahead and mention numbers of instances where the regulatory power of Congress as contained in the Constitution has been invoked for prohibiting the transportation from place to place of certain articles, and the courts have well settled the proposition that the power of Congress to regulate the transportation of persons differs in no particular or degree from its power to regulate the transportation of property and things.

From the authorities which I have cited, as well as from reason, I am of opinion that the act questioned was clearly within the power of Congress, and that, therefore, the exceptions of the defendants to the indictment ought to be overruled, and it is so ordered.