## UNITED STATES v. DENICKE.

*(Circuit Court, S. D. Georgia, W. D. May, 1888.)*

1. POST-OFFICE—OFFENSES AGAINST POSTAL LAWS—LARCENY FROM MAILS—DECOY LETTER.

A letter with a fictitious address, which therefore cannot be delivered, is not "intended to be conveyed by mail," within the meaning of the statute.

2. SAME—INDICTMENT—VARIANCE.

Where the indictment charges that a letter alleged to be embezzled was directed to the treasurer of the Travellers' Insurance Company, and the proof shows it was directed to the Traders' Insurance Company, the variance is fatal.

3. SAME—SEARCHING ACCUSED.

The practice of post-office inspectors, of stripping naked and searching the accused, without a warrant, commented on.

*(Syllabus by the Court.)*

United States against Rudolph Denicke. Indictment for embezzling a letter intended to be conveyed by mail.

*Dupont Guerry*, U. S. Atty., for the Government.

*Dessau & Bartlett*, for defendant.

SPEER, J. The question arises in the following manner: The indictment charged that the defendant, Rudolph Denicke, postal-route agent, in the employ of the post-office department, embezzled a letter addressed to the Travellers' Insurance Company of Pittsburgh. On the trial, the prosecution proved that a letter written to the Traders' Insurance Company of Pittsburgh was mailed at Gordon by Chambers, the assistant postmaster there, under the direction of Hancock, postal inspector. It contained a five-dollar bill. Chambers testified that he had no dealings' with the Traders' or the Travellers' Insurance Company of Pittsburgh; that he did not wish the accident insurance policy for which the letter asked, and, so far as he knew, no such insurance company was in existence; and the district attorney thereupon admitted that the letter was written to a fictitious address. It was also in proof that the post-office inspector, Hancock, promised Chambers to intercept the letter in the mail; to use the language of the witness, "to capture" it, and return Chambers his

money. At this point the letter was offered in evidence, and, it appearing that it was described in the indictment as being directed to the Travellers' Insurance Company, and the letter itself being written to the Traders' Insurance Company, the defendant's counsel objected to its introduction on the grounds (1) that by the proof it was not a letter intended to be conveyed by mail, within the meaning of the statute; and (2) that there was such a fatal variance in the allegations and the proof that it must be necessarily excluded.

In the humanity of the law it is settled that a party charged with crime is presumed to be innocent until the crime is proven against him, as charged. All the substantial allegations of the prosecution must be proven as laid. This is not only elementary law, but it is wise in principle and in its results to the fairness and impartiality of criminal procedure. Not only must the statute, said to have been violated, be shown to have been broken, but the crime described, must be proven as described. Among other reasons for this doctrine are these: A person accused is entitled to have full and accurate notice of the charge against him, in order that he may know how to make his defense. Again, it is essential in the administration of justice in order to prevent two prosecutions for one and the same transaction. The defendant is charged with a violation of this law as found in section 3891 of the Revised Statutes: "Any person employed in any department of the postal service, who shall * * * embezzle any letter intrusted to him, or which has come into his possession, and which was intended to be conveyed by mail, shall be punished * * *." Now, it is charged that the defendant, a person employed in the department of the postal service, embezzled a letter intrusted to him, and directed to the treasurer of the Travellers' Insurance Company of Pittsburgh, Pa., and which was intended to be conveyed by mail. Does the proof upon which the government relies, sustain these allegations? Was this letter, in contemplation of the law, a letter "intended to be conveyed by mail?" It is conceded that it is directed to a corporation not in existence; that the address is fictitious; that it was not desired by either of the parties who were concerned in the sending of this letter that it should be conveyed to the address specified in the indictment. It is also conceded that it was a decoy letter; that it was the purpose of the post-office inspectors to intercept, or, to use the words of the witness, to "capture" it somewhere on its route, provided it passed the hands of the suspected party; if it did not pass his hands it was their purpose to capture it in his possession. It was not intended to be conveyed to the Travellers' Insurance Company, or to the Traders' Insurance Company; and it seems to come most clearly within the decision of Judge NEUMAN in the case of U. S. v. Rapp, 30 Fed. Rep. 818. In that case a "nixe"—that is, a letter addressed to a fictitious person, or to a place where there was no post-office—was placed in what is known as the "nixe basket," a receptacle for unmailable matter. This was to be forwarded to the dead-letter office. This was held by the court not to be mail matter within the meaning of sections 5467, 5469, of the Revised Statutes. It was held distinctly not to be matter intended to be conveyed by mail; and Judge

NEUMAN uses this language: "I do not believe that under this section it can be held that the packet was intended to be conveyed by mail, when the proof in this case for the government shows that there was no such intention." "1 must," said the learned judge, "construe the language of this criminal statute, by a rule of law that is axiomatic, strictly in favor of the defendant. See *U. S.* v. *Whittier*, 5 Dill. 35, and cases cited. But, considering it according to its fair and ordinary meaning, can the words 'mail matter' be held to include this package? I think not. And this last view of the matter, in my opinion, applies to both of these cases. As stated above, I think the whole of this law  *  *  *  refers to mail under the protection of the government, or the postal authorities as such. I do not hold that what is called under the testimony in this case a 'decoy' or 'test' letter, or the contents thereof, might not, when regularly mailed, be the subject of embezzlement, and punishable under this section, but I think it should get into the mail in some of the ordinary ways provided by the postal authorities, and become fairly and reasonably part of the mail matter under the control of the postal authorities."

Now, in the spirit and purview of this decision, can a letter with an impossible address, which can never be delivered, and which the sender and the post-office inspector, acting conjointly, determine should be intercepted in the mail, be a letter intended to be conveyed by mail in the meaning of section 3891. A letter is a written or printed message. Now, there can be no message to that which is not in existence. Besides, if the letter is intended to be conveyed by mail it must have a destination to which it can be conveyed. This letter had no such destination. In the cases cited by the district attorney, the decoy letters were addressed to a real and genuine address, and were regularly mailed. No case was produced where a decoy letter to a fictitious, unreal address was considered as within the class that were intended to be conveyed by mail. In the English case of *Queen* v. *Gardner*, 1 Car. & K. 628, cited by Judge NEUMAN, the embezzlement of a decoy letter was held not stealing a post-letter within the statute; taking of the contents was held larceny There is no charge in the indictment that the defendant took the contents of the letter. In the case of *Queen* v. *Rathbone*, 2 Moody, Cr. Cas. 242, an inspector secretly put a letter prepared for the purpose, containing a sovereign, among some letters which a letter carrier suspected of dishonesty was about to sort. The letter carrier stole the sovereign. Mr. Baron GURNEY held that he could not be convicted of stealing a post-letter, such letter not having been put in the post in the ordinary way, but was rightly convicted of larceny of the sovereign laid as the property of the postmaster general. This case was considered at a meeting of the judges at Michaelmas term, 1841, and they were unanimously of the opinion that there could be no conviction for stealing the post-letter, the statute only applying to letters sent in the ordinary way. It is observable that this letter had apparently a genuine address, and also that it was placed with the letters all of which were in the custody of the post-office department, and which it was the duty of the carrier to sort. There can be no difference in principle between this case and *Rapp's Case*. In both cases

the letters were "nixes," that is, they were without mailable direction; in both cases they must have gone to the dead-letter office. This statute was not made in contemplation of letters of this character. It was made to protect the genuine mail intended to be conveyed from one person to another. It was made to protect the mail in which the people have an interest; not fictitious papers or packages fixed up like the "nixe" in the case before Judge NEUMAN, or the "nixe" in this case. A letter to be conveyed by mail must have a sender and a receiver; a place from which it starts and a destination to which it can be conveyed. We can fully see, if this practice was permitted to stand as a part of the legalized methods of trials of this character, how very great injustice might be done. It would be possible for unscrupulous officers to prepare a trap which could convict any man, however innocent. The accused should at least have the privilege of showing, if he could, that the letter which he is charged to have embezzled reached its destination. If it has no destination, this method of defense is denied him. Take the facts of this case, as they were developed on the former trial, to illustrate what might be the danger and injustice of this proceeding. The defendant is alone in his mail car. Suddenly the inspectors rush in upon him. Against his protest, and without the warrant required by law, they stripped him naked. One of the inspectors has his back turned, and is engaged in the examination of the prisoner's vest. The train is in rapid motion. A sound as of a letter falling is heard. The inspector engaged with the prisoner cries out, "Here it is; he threw it on the table." The prisoner bitterly denied this, and charged that the inspector himself produced the letter, and threw it on the table. The letter was sealed, and its contents intact, but the inspector testified that it looked as if it had been opened. It cannot be doubted that, if the inspector be an unscrupulous man, with a letter starting from his control, and with a fictitious address, it would be possible in this manner to convict an innocent man. Such methods are not to be tolerated under our free government. They are more in consonance with the methods of despotism, where the liberty of the citizen is at the mercy of the government detectives. *Boyd v. U. S.*, 116 U. S. 616, 6 Sup. Ct. Rep. 524.

But the prosecution must fail for another reason: There is a fatal variance between the allegations and the proof. It is charged that the letter embezzled was directed to the treasurer of the Travellers' Insurance Company, Pittsburgh, Pa. The letter offered in evidence is written to the treasurer of the Traders' Insurance Company, Pittsburgh, Pa. However guilty might be the prisoner, it would be impossible to enforce the law with such a variance in pleading and proof as this. "It being necessary," says Mr. Greenleaf, in his work on Evidence, paragraph 63, "to prove the substance of the issue, it follows that any departure from the substance in the evidence produced must be fatal, constituting what is termed in the law a variance. * * * If the allegations contain matter of description, and is not proved as laid, it is a variance, and is fatal. Thus, in an action for malicious prosecution of the plaintiff upon a charge of felony, before Baron WATER PARK, of Water Fork, proof of

such prosecution before Baron WATER PARK, of Water Park, was held to be fatally variant from the declaration. Mr. Bishop states the rule as follows: "No allegation, whether necessary or unnecessary, which is descriptive of the identity of that which is legally essential to the charge in the indictment, can be rejected as surplusage." 1 Crim. Law, 485. The allegation being that the letter was directed to the treasurer of the Travellers' Insurance Company, and the letter showing that it was directed to the Traders' Insurance Company, furnishes as complete and unanswerable an offense against the rule as can be found. A charge of embezzlement of the property of the Central Railroad & Banking Company would be as well sustained by proof of theft from the Georgia Railroad & Banking Company. Upon both grounds, therefore, the prosecution must fail; and the court is strongly inclined to think, from all the circumstances surrounding the prosecution, that there is substantial justice in the result. Certain it is in accordance with the law which presumes the defendant innocent until he is proven to have violated the law in the manner charged in the indictment, and upon a fair trial, in which he has been deprived of none of the constitutional privileges or immunities of the citizen.

The government being unable to proceed with its case, the jury is directed to find a verdict for the defendant.