### BENNETT v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. March 5, 1912.)

No. 2,178.

1. COMMERCE (§ 47*)—TRANSPORTATION OF PERSONS—REGULATION BY CONGRESS.

Transportation of persons as well as of property is "commerce," and Congress may regulate their interstate transportation. ·

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 26; Dec. Dig. § 47.*

For other definitions, see Words and Phrases, vol. 2, pp. 1287–1298; vol. 8, pp. 7606–7607.]

2. COMMERCE (§ 55*)—"REGULATE"—INCLUDES POWER TO PROHIBIT.

The constitutional power of Congress to "regulate" interstate commerce includes the power to prohibit, in cases where such prohibition is in aid of the lawful protection of the public.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 72–102; Dec. Dig. § 55.*

For other definitions, see Words and Phrases, vol. 7, pp. 6041–6047; vol. 8, p. 7782.]

3. COMMERCE (§ 47*)—INTERSTATE TRANSPORTATION OF PERSONS—WHITE SLAVE ACT—CONSTITUTIONALITY.

Act June 25, 1910, c. 395, 36 Stat. 825, commonly known as the "White Slave Act," which forbids the inducing of a person to come into a state, with unlawful purpose by the inducer and in aid of such unlawful purpose, is not unconstitutional as an invasion of the police power of the state.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 26; Dec. Dig. § 47.*]

4. COMMERCE (§ 82*)—INDICTMENT AND INFORMATION (§ 180*)—VARIANCE—DESIGNATION OF PERSON OTHER THAN DEFENDANT.

An indictment, charging defendant with inducing the interstate transportation for an unlawful purpose of Opal Clark, and evidence that the woman transported was known to defendant as Jeanette Clark, and that her real name was entirely different, did not constitute a variance, in view of the fact that the record clearly indicated the identity of the woman named in the indictment with the woman, whom defendant must

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

have known to be the one intended to be named and with the woman who was actually transported.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §·47; Dec. Dig. § 82;* Indictment and Information, Cent. Dig. §§ 551–556; Dec. Dig. § 180.*]

5. INDICTMENT AND INFORMATION (§ 173*)—MISNOMER—VARIANCE.

That the true name of the person charged with the offense was proved to be not the same as that given in the indictment is not a fatal variance, where defendant was not misled, and the record would protect him against another prosecution.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 539; Dec. Dig. § 173.*]

6. INDICTMENT AND INFORMATION (§ 180*)—VARIANCE.

That the offense is charged as committed with reference to two named persons, and proved as to one only, is not a fatal variance, where accused was not misled, and the record will protect against another prosecution.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 551–556; Dec. Dig. § 180.*]

In Error to the District Court of the United States for the Southern District of Ohio.

Della Bennett was convicted of violation of the white slave act, and she brings error. Affirmed.

Respondent was, upon her plea of not guilty, convicted of violating the act of June 25, 1910, commonly known as the "White Slave Act." The testimony indicated that she was the keeper of a house of prostitution in Cincinnati; that in the summer of 1910, a former inmate of her house, then known to her by the name of Jeanette Clark, was in a similar house in Chicago; that respondent sent to Jeanette Clark several letters and telegrams asking her to return and bring other girls with her; that finally respondent sent railroad tickets for this purpose, and Jeanette Clark and Eva Parks used the tickets to come from Chicago to Cincinnati, and entered and remained in the Bennett house. The errors assigned are upon the constitutionality of the law and upon some questions of evidence.

Max Levy, for plaintiff in error.

Thomas H. Darby, Asst. U. S. Atty. (Sherman T. McPherson, U. S. Atty., on the brief), for the United States.

Before WARRINGTON, KNAPPEN and DENISON, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). It is clear that the power of Congress to pass this statute must be found in its power to regulate commerce. The arguments of counsel for plaintiff in error, as we understand them, are that commodities only, and not persons, can be the subject of commerce; that persons cannot be prohibited from traveling from one state to another because of some intention they may have; that the woman herself is not by this act forbidden to travel, and it cannot be a criminal act to aid an unforbidden act; and that the law is an invasion of the police powers of the states.

[1] It cannot now be doubted that transportation, of persons as well as of property, is "commerce," and that Congress may regulate the interstate transportation of persons. Glouchester Ferry Co. v.

Pennsylvania, 114 U. S. 196, 203, 5 Sup. Ct. 826, 29 L. Ed. 158; Covington Bridge Co. v. Kentucky, 154 U. S. 204, 217, 14 Sup. Ct. 1087, 38 L. Ed. 962. See, also, the cases involving passenger traffic under the interstate commerce acts.

[2] It is also settled that the constitutional power to regulate includes the power to prohibit, in cases where such prohibition is in aid of the lawful protection of the public. The Lottery Case, 188 U. S. 321, 354, 23 Sup. Ct. 321, 47 L. Ed. 492.

We think it a mistake to assume that this statute does not prohibit, and so impliedly permits, the primary act and yet punishes as a crime a merely incidental wrong. The act does not undertake to prohibit the woman from traveling from one state to another of her own volition, and in the supposed exercise of her inherent personal rights, no matter what her purpose as to her future conduct may be. This conclusion is emphasized by observing that the woman traveling may be perfectly innocent of any intended immorality, and that the act cannot be intended to interfere with liberty of travel by such person. The primary thing forbidden is the inducing of a person to come into the state, with unlawful purpose by the inducer and in aid of such unlawful purpose, but without direct regard to the innate character or purpose of the person induced. It is this primary thing, and the incidental transportation by the carrier, which are forbidden and penalized.

[3] We do not find in the statute either the purpose or the effect to interfere with the police powers of the state. The law is directed only against the inducing or performing of interstate transportation; and this entire subject-matter is obviously not within the scope of the police power of any state; hence its exercise cannot be an invasion of such power. It may well be assumed that the laws of all states prohibit, as those of Ohio do, the various ultimate acts of immorality referred to in this statute, and it follows that the law in question is in aid of the complete and effective exercise by the states of their respective police powers, and is of the same class as many acts of Congress in recent years having the same general purpose. See enumeration of such acts in U. S. v. Hoke (D. C.) 187 Fed. 992, 1000, 1003.

We conclude that the act is not open to the constitutional objections presented.

[4] Respondent urges that while she was indicted for causing the interstate transportation of Opal Clark, and it was not alleged that Opal Clark had, in fact or by repute, any other name, the evidence showed the transportation of a woman who was known to respondent as Jeanette Clark, and whose real name was wholly different. This is said to be a variance between allegation and proof, and we are cited to cases in text-books and reports to the effect that the indictment should contain the true name of the individual affected by the criminal act. It is not necessary to review these cases. Some of them were decided under stricter rules of pleading than this court has applied. The essential things involved are that the record should be in such shape as to protect the respondent against a second prosecution for what is really the same offense, and as fairly to inform respondent of the crime intended to be alleged. These considerations involve the

question of the identity of the person named—either actual identity or identity as supposed by respondent. Whatever obstacles, if any, there might be in afterwards interpreting and applying the record of indictment and judgment by parol testimony, as must be and is done with reference to civil judgments, we find in this case that the bill of exceptions is now a part of the record as much as is the indictment or the judgment, and that by the whole record there clearly appears the entire identity of the person named in the indictment with the person whom respondent must have known to be the one intended to be named and with the person who was actually transported. This leaves no possible ground for prejudice resulting from the double variance between the name used in the indictment and the name known to respondent and the real name.

[5, 6] Respondent further urges that while the indictment charges the transporting of two persons for the purpose stated, the proof wholly failed as to one of them. This also amounts to a claim of variance between allegation and proof. If we accept the claim that the proof did so fail, still we would not think the variance fatal. The violation of the statute is complete if one person is transported, and the fact that two persons are named in the same count, instead of basing a separate count upon the travel of each person, should not be fatal to a conviction. It is true that where two persons are named as the subject of the offense, and it is proved as to one of them only, there is a seeming variance, but it is really a failure of proof as to a thing which it was not necessary to allege. The only points here, which are of substance and not of form, are, as with reference to the last matter discussed, the question of misleading the respondent and the question of protection against a future prosecution. It is clear that respondent would not be misled unless there were two occasions so as to give rise to some ambiguity, and no such thing here appears. It is true, also, that, as to the person concerning whom the proof failed, the record would show a conviction which was in so far really unauthorized, but the protection against a future prosecution would be just as perfect, and it cannot be presumed that the action of the trial court, in possession of all the facts, would be prejudicially affected in the matter of sentence. In these respects, the case is within the rule that a general conviction and sentence upon several counts will not be disturbed because all but one of the counts are bad, provided the good count supports the sentence. Claassen v. U. S., 142 U. S. 140, 146, 12 Sup. Ct. 169, 35 L. Ed. 966; Hardesty v. U. S. (C. C. A. 6) 168 Fed. 25, 26, 93 C. C. A. 417.

The judgment will be affirmed.