### MYERS et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. May 12, 1915.)

No. 239.

1. POST OFFICE ⊂=48—MISUSE OF MAILS—SCHEME TO DEFRAUD

Where defendants devised a scheme to defraud by the use of the mails prior to the Criminal Code (Act March 4, 1909, c. 321, 35 Stat. 1088 [Comp. St. 1913, §§ 10165–10519]), and continued the scheme after the Code went into effect, there was equivalent the devising of such scheme after the taking effect of the Code, and under an indictment charging a violation of the Code the government could show the acts of defendants prior to the Code.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 67–80; Dec. Dig. ⊂=48.]

⊂=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. CRIMINAL LAW ☞1151—CONTINUANCE—DISCRETION OF TRIAL COURT.

Denial of a continuance to enable accused to prepare his defense will not be disturbed, in the absence of a plain abuse of discretion.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3045-3049; Dec. Dig. ☞1151.]

3. CRIMINAL LAW ☞590—CONTINUANCE—DENIAL.

A trial of defendants resulted in a disagreement of the jury. About a year later a second trial was had. Defendants were unable to retain their original counsel, and the court, 11 days before the second trial was set, assigned counsel. Defendants delayed in notifying the court that counsel would have to be assigned. One of the defendants did not come to the place of the trial until three days prior thereto. The stenographer's minutes of the first trial were available. Held, that denial of a reasonable continuance for preparation of the defense was not an abuse of discretion.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1316, 1317; Dec. Dig. ☞590.]

4. CRIMINAL LAW ☞1169—HARMLESS ERROR—ERRONEOUS ADMISSION OF EVIDENCE.

Where the acts of defendants charged with crime warranted a characterization in stronger language than that used in a newspaper article admitted in evidence, the error in admitting the article was not prejudicial.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 754, 3088, 3130, 3137-3143; Dec. Dig. ☞1169.]

5. CRIMINAL LAW ☞867—NEWSPAPER PUBLICATIONS—MISTRIAL.

Where accused's counsel brought to the attention of the court a newspaper publication improperly commenting on proceedings in the trial before the court alone, by insisting on making a motion for withdrawal of a juror in open court on account of the publication, but the court at once cautioned the jury to give no attention to the publication, if any of them had read it, the refusal to declare a mistrial was not reversible error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2071-2078; Dec. Dig. ☞867.]

6. CRIMINAL LAW ☞1171—HARMLESS ERROR—IMPROPER CONDUCT OF GOVERNMENT'S COUNSEL.

Where the evidence conclusively established the guilt of accused, the misconduct of government's counsel in making prejudicial statements and unfairness in cross-examining accused did not justify setting aside of a conviction.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3126, 3127; Dec. Dig. ☞1171.]

7. CRIMINAL LAW ☞1170—HARMLESS ERROR—ERRONEOUS EXCLUSION OF EVIDENCE.

Where the guilt of accused was established by substantial evidence, exclusion of evidence which could not affect the verdict was not prejudicial.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3145-3153; Dec. Dig. ☞1170.]

8. POST OFFICE ☞35—MISUSE OF MAILS—SCHEME TO DEFRAUD—"FRAUD."

A scheme by defendants to defraud persons by inducing them to deposit money for the purchase of treasury stock of a corporation, on representations that the money deposited would be used in conducting the business of the corporation, while the defendants intended to convert a large part of the money to their own use and to deliver to the persons depositing the money their own personal stock, is a "fraud," within Rev. St. U. S. §§ 5440, 5480, and Criminal Code, §§ 37, 215, punishing a conspira-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

cy to commit any offense against the United States, and punishing the use of the mails to promote frauds.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55; Dec. Dig. ☜35.

For other definitions, see Words and Phrases, First and Second Series, Fraud.]

**9. POST OFFICE ☜48—MISUSE OF MAILS.**

Under an indictment for misuse of the mails in furtherance of a scheme to defraud by selling the individual corporate stock of defendants, falsely represented to be treasury stock, it is unnecessary to go into details of controversies as to the truth of general statements as to the condition of the properties whose stock defendants were offering for sale, and where the act charged was clearly established by satisfactory evidence it was immaterial whether other misleading representations were made or not.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 67–80; Dec. Dig. ☜48.

Nonmailable matter, see notes to Simmons v. United States, 30 C. C. A. 79; McCarthy v. United States, 110 C. C. A. 548.]

**10. CRIMINAL LAW ☜1162—HARMLESS ERROR.**

Where every element of the offense charged has been proved and stands practically undisputed, only some glaring and obviously harmful error will justify a reversal.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3085; Dec. Dig. ☜1162.]

**11. CRIMINAL LAW ☜1043—JOINDER OF OFFENSE—OBJECTIONS.**

Where objection was made to the trial under two indictments together, and counsel stated that he would file his reasons later, but no reasons were filed, and the several transactions were all of a cognate character, the objection of the joinder will not be considered on appeal.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2654, 2655; Dec. Dig. ☜1043.]

**12. CRIMINAL LAW ☜798½—INSTRUCTIONS—VITAL ERROR.**

An instruction at the close of the charge, in response to a juror, as to whether the verdict should be written or oral, that the rule varies in different districts, that in that district the verdict is oral, that the clerk will ask the foreman if the jury have agreed, and if the jury have he will ask whether defendants are guilty, and that if they are the jury will say on what indictments or what counts, and that the jury can write out the verdict and read it in answer to the clerk's question, cannot be complained of as vital error, and will not be reviewed, in the absence of any exception to it or assignment of error thereon.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1801, 1938; Dec. Dig. ☜798½.]

In Error to the District Court of the United States for the Southern District of New York.

This cause comes here upon writ of error to review a judgment of conviction.

Defendants were tried under two indictments. The first contained 8 counts. Of these the first charged that on February 1, 1905, and continuously and at all times until December 29, 1909, defendants engaged in a conspiracy to defraud divers persons by inducing them to deposit money for the purpose of purchasing treasury stock of a certain specified mining corporation upon certain representations, among others, that the money so deposited would, except for a small commission, be used in conducting the business of the corporations; that defendants in truth intended not thus to use the money,

but to convert a large part of it to their own use, delivering to the persons thus depositing, not treasury stock, as promised, but defendants' own' personal stock; that it was intended by defendants that the scheme should be effected by use of the mails. The second, fifth, and eighth counts, with changes of dates and names of corporations, charged similar conspiracies. All these counts were under section 5440, U. S. Rev. Statutes. The fourth count was dismissed on the government's own motion prior to the beginning of the trial. The third, sixth, and seventh counts charged each the devising of a scheme to defraud—similar to that above set forth—under section 5480, U. S. Rev. Statute.

The second indictment contained 11 counts. Except the first and fifth, each of these counts charged that in 1910 defendants, having theretofore devised a scheme to defraud (setting it forth), used the mails in furtherance of the scheme, under section 215, Criminal Code. The first and fifth counts charge conspiracy to violate that section—under section 37, Criminal Code. All these schemes and conspiracies were of the same character, dealing with various named mining companies.

The jury promptly convicted both defendants on every one of the 18 counts submitted to them. Under the first indictment each was sentenced to one year's imprisonment. Under the second each was sentenced to five years' imprisonment, to begin at the termination of the sentence under the first indictment, and Myers was also fined $10,000.

George Gordon Battle, of New York City, for plaintiffs in error.

Henry N. Arnold and Raymond G. Brown, Sp. Asst. Attys. Gen., for the United States.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. [1] The record is inordinately long; there are four volumes of testimony; the trial lasted seven weeks; there are hundreds of exhibits. It is a most unfortunate practice to multiply counts, to marshal large numbers of defrauded persons, and to give testimony as to scores of "similar offenses to show intent," when, as will be seen from subsequent reference to the testimony, guilt in act and in intent is readily provable by documents about whose issue or signature by defendants there can be no doubt. In this connection we may state that we find no error in showing the doings of defendants prior to January 2, 1910, when the Criminal Code went into effect. Although they might have devised a scheme to defraud prior to that date, continuance of such scheme after the Code went into effect would be a full equivalent of devising such scheme on that day.

[2, 3] In discussing the case, the order in which the points relied upon by plaintiffs in error are presented in their brief will be followed, so far as practicable. It is contended that application for a reasonable continuance for the purpose of preparation was denied defendants. Unless there were some plain abuse of discretion, there is nothing which calls for review. The cause had been tried about a year before (resulting in a disagreement of the jury) and had taken nine weeks to try. Defendants asserted that they were not able to retain counsel who represented them on the first trial, or indeed any other, so counsel were assigned by the court on January 9, 1914; the trial being set for January 20th, a few more days being available for impaneling a jury and opening the government's case. Defendant's delay in notifying the court that counsel would have to be assigned

was chargeable to themselves. So, too, was the circumstance that one of the defendants chose not to come on from San Francisco until January 17th. Moreover, the nine weeks' trial, stenographer's minutes of which were available, showed up fully what defendants must expect to meet, and made the task of counsel easier than it would have been, had they not known what the details of the government's proof were to be.

[4] The second point discusses the introduction in evidence of a clipping from a newspaper, the Daily Mining Record of Denver, which it claims was highly prejudicial. Some letters between defendant Wisner and the editor or publisher of the paper had been put in evidence; all of these are apparently not printed in the record; at least all are not indexed. They seem to have involved some objections or explanations by Wisner in respect to statements which had appeared in the paper. The publisher, being on the stand, identified an issue of the paper containing the article. Objection being made, the government stated that it was offered, not in evidence of any statement of fact therein contained, but as throwing light on a letter of Wisner to investors, stating that Reinhart, the publisher, was trying to blackmail him, in order to get advertisements.

We are inclined to think the article was admissible in explanation of the letter; but, however that may be, we are satisfied that what happened was not prejudicial to defendants. The article was a long one, about 17 pages, but the court allowed only some 3 pages to be read to the jury. Nearly all of this admitted portion contained merely a summary of the contents of defendant's circulars and advertisements; all of which were abundantly proved otherwise. Through some oversight apparently, the admitted portion contained a sentence in which, criticising the Wisner method of promotion and sale of stock, the writer of the article said it "savors of the worst sort of quackery. The Record will leave to its readers to indulge in more severe language, if they so desire. In the light of A. L. Wisner & Co.'s avowed reasons for paying dividends simultaneously with the sale of treasury stock, this practice, which under any circumstances may be set down as wanting in conservatism, is made to stand out in all its shadowed outlines, gaunt and unmistakable." We find it difficult to suggest a satisfactory reason for the admission of these quoted sentences, but in view of the fact that the characterization of defendant's acts warranted much stronger language than that used in the newspaper article, we cannot believe that the defendants were injured by its introduction.

[5] It is next assigned as error that defendant's motion for withdrawal of a juror was denied. The motion was made because of a publication in two or three newspapers, while the trial was in progress. The circumstances were these: About a week after the trial began, defendants being both enlarged on bail, counsel for the government asked the trial judge to place defendant Myers "under conditional surveillance during his trial," stating he (counsel) felt "it would be a great danger to the trial to allow this man, who has plenty of money, to go about the city." It was also stated that on the former trial the jury, although kept out a very long time, disagreed, 11 to 1. This

motion was not made in court, but in Judge Martin's chambers; counsel were careful to keep it from the jury. Some enterprising journalist published it in the next issue of his paper. In a community where there is a different conception of the method of conducting criminal trials, no newspaper would have published what these New York papers did while the trial was going on. But that is the atmosphere in which our trials are conducted; if mere publication of such matters were sufficient ground for declaring a mistrial, few cases of any general interest would reach a conclusion; there would be a succession of abortive efforts to get the cause to the jury with nothing before them but what the court admitted in evidence. In this case it was defendant's counsel himself who brought the matter to the jury's attention by insisting on making his motion for withdrawal of a juror in open court. The court at once and quite fully cautioned the jury to give no attention to the article, if any of them should happen to read it. All that was stated in open court was that an article had appeared in one or two newspapers that the statements therein had "nothing to do with the facts of the case or with the guilt or innocence of the defendants." We find no error in the court's refusal to declare a mistrial. Moreover, the record indicates that no exception was reserved to denial of the motion.

[6] The fourth and fifth points deal with what are alleged to be "prejudicial statements" by counsel for the government, and alleged unfairness in questioning one of the defendants when on the witness stand. The sixth point refers to the exclusion of three letters offered by defendant, which it is averred tended to show honest intent in regard to the disposition of certain of the mining properties, and the bringing about the appointment of receivers of some of the properties. The seventh relates to the exclusion of evidence to show what Wisner did with the moneys he obtained from sales of the stock mentioned in the indictments. Inasmuch as the sufficient answer to all these objections is found in the thoroughly satisfactory evidence which established the guilt of the defendants, they may all be disposed of together.

Counsel for the government, being asked on one occasion what was the purpose of certain testimony he was asking to introduce, said that it was to show that "defendant and Mr. S. (one of his counsel) had prepared a false and perjured defense." The judge ordered this to be stricken out and told the jury to pay no attention to it. Defendant Myers, upon his direct examination, had, for some reason, given a sketch of his life, referring to several transactions in his early career having nothing to do with the enterprise mentioned in the indictments. On cross-examination the government's counsel, going over these details of the witness' early life, questioned him in a most objectionable manner; for instance, "Have you not lived by schemes to defraud since you were a boy?" and many similar questions being put to him. No amount of heat generated by the irritation of a long trial will excuse counsel for phrasing his questions so that each one is an insult, and when this is done counsel should be sharply reproved. But his doing so several times during a seven weeks' trial will not be sufficient ground for setting aside, on any theory of preju-

dice, a verdict plainly warranted by the evidence. Indeed, the prejudice is usually the other way; such treatment of a witness is calculated to excite the sympathy of a jury.

[7-9] The longer the trial the more improper incidents of this sort there may be. Also in a long trial there will be occasions when some piece of competent testimony is excluded; if it is unimportant, if it can be plainly seen that its admission could not possibly have changed the result, such exclusion will not constitute reversible error. We do not find it necessary separately to discuss the few instances referred to where testimony was excluded, because the case proved was so plain and convincing that it is manifest the verdict came, not because of any prejudice, but because intelligent jurors could reach no other conclusion. Although the case was confused by a multitude of separate charges of manifold fraudulent statements, by a mass of testimony which ran to inordinate length, by controversies as to this, that, or the other detail of the physical and financial condition of these various mining companies and properties, there is one proposition established beyond any peradventure—defendants invited people to buy "treasury stock," and when the invitation was accepted and the money paid they gave to the persons they had induced to purchase, not treasury stock, but their own personal stock. That this is fraud of the sort contemplated by the statute under which the indictments were found is settled by our opinion in Wilson v. U. S. (Aug. 20, 1911) 190 Fed. 427, 111 C. C. A. 231, where we held that it was fraud, although the persons who thus palmed off their personal stock loaned the proceeds of the sale to the company. With that species of fraud shown, it is unnecessary to go into the details of controversies as to the truth or falsehood of glittering statements as to the condition of the properties whose stocks defendants were offering for sale.

[10] This particular fraud was not only proved, but was proved in such a way that no help was needed from the instances of other false statements with which the record is filled. It was proved by defendant's own circulars, by their signed letters, by their admissions on the stand, by their counsel's admissions on the trial, and, indeed, practically in this court, because nowhere in the brief of 115 pages is there a single suggestion that they did not unload their own personal holdings on persons whom they induced to believe that they were purchasing treasury stock. With this controlling fact clearly established, it is idle to discuss whether any other misleading representations were or were not made, or what the prospects of the various properties were, or whether some particular bit of evidence might induce a belief that defendants were unprincipled men. Irrespective of all the other testimony, and with the conceded facts before them as to sale of stock falsely alleged to be "treasury stock," the jury would be bound to find that defendants had devised a scheme to defraud, if they were intelligent and conscientious. A man who plans to dispose of his individual stock to another by representing that it is treasury stock, so that the purchaser will suppose that the money he pays for it will pass directly to the company, instead of going into the seller's pocket, has devised a scheme to defraud. When he has effected the sale through such misrepresentations he has defraud-

ed his neighbor; and it makes no difference under this statute what he does with the proceeds of his fraud, the devising of the scheme is enough—plus, of course, the use of the mails. That in this case defendants used the mails in furtherance of their scheme is not, so far as we know, disputed. Every element of the statutory offense has been proved and stands practically undisputed. Under such circumstances only some glaring and obviously harmful error would justify a reversal.

[11] It is unnecessary to refer to any of the other points raised as to admission or exclusion of testimony. In point XI it is contended that the court erred in granting the motion of the government that the two indictments be tried together under section 921. Objection was made at the time, counsel stating that he would file his reasons later. The brief does not refer to any such subsequent filing nor does the assignment of error (No. 12) indicate the grounds of objection. One man, Humphrey, was defendant in the first indictment, but not in the second; the case against him had been nol. prossed some months before the trial; the several transactions were all of a cognate character. The oral argument was largely directed to points of objection to the joinder in trial, apparently not called to the attention of the trial judge.

[12] It is argued on the brief that there was "vital error" in the following remarks of the court: At the close of the charge juror No. 1 asked whether the verdict should be written or oral. To this the court replied:

"That is a very sensible question. It varies in different districts. In the Southern district of New York it is oral. The clerk will ask the foreman if you have agreed, and, if you say you have, then he will ask you, what say you? Are the defendants guilty, and if you say they are, upon what indictments or what counts in the indictments, and you can state. You can write it out and read it off. In some districts they write out a verdict, and it is handed in to the clerk; but I understand that is not the practice in this district. You can write it out, and read it out, and read it in answer to the clerk's question."

It is not surprising to find, upon referring to the record, that this instruction was not excepted to or assigned as error; the theory that it was "vital error" is an afterthought too unimportant to call for consideration.

The judgment is affirmed.