## MATHEWS v. UNITED STATES.*

(Circuit Court of Appeals, Eighth Circuit. October 4, 1926.)

No. 6724.

1. Indictment and information ⬅119—In indictment for conspiracy and use of mails to defraud by sales of corporate bonds, allegations as to individual defendants' ownership of land held surplusage, and instruction so to treat not in effect amendment of indictment (Criminal Code, §§ 37, 215 [Comp. St. §§ 10201, 10385]).

Indictment, under Criminal Code, §§ 37, 215 (Comp. St. §§ 10201, 10385), for conspiracy and for use of mails to defraud by sale of corporate bonds allegations that individual defendants were owners in fee of certain lands securing bonds *held* surplusage, in face of another allegation that such lands were owned by corporation, and hence instruction to that effect was not erroneous as in effect an amendment of indictment.

2. Indictment and information ⬅119.

"Surplusage" is an allegation of matter wholly foreign and impertinent to the cause, unnecessary averment in an indictment, or any allegation without which pleading would yet be adequate.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Surplusage.]

3. Indictment and information ⬅171.

"Variance" is difference or disagreement between essential parts of a legal proceeding, which to be effectual must agree, or a disagreement in some matter which in point of law is essential to charge.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Variance.]

4. Indictment and information ⬅171.

The tests of fatal variance are: Was defendant misled? Will he be protected against a future proceeding?

5. Post office ⬅48(4).

Indictment under Criminal Code, § 215 (Comp. St. § 10385), for use of post office in execution of scheme to defraud, must set out scheme sufficiently to acquaint defendant with particulars, but not to extent required if scheme was gist of offense.

6. Post office ⬅49.

In prosecution under Criminal Code, § 215 (Comp. St. § 10385), for use of mails in execution of scheme to defraud, no particular element of scheme need be proven, if other elements are sufficiently proven to establish it.

7. Post office ⬅48(8).

In prosecution under Criminal Code, § 215 (Comp. St. § 10385), for use of mails in fur-

*Rehearing denied December 31, 1926.

therance of scheme to defraud, proof must establish scheme substantially as alleged, though variance in matters not of vital importance is not fatal.

**8. Post office ⬅48(8).**

In prosecution under Criminal Code, § 215 (Comp. St. § 10385), for use of mails in furtherance of scheme to defraud by sale of corporate bonds, variance between allegations of ownership of lands securing bond issue and proof *held* not fatal.

**9. Post office ⬅48(8).**

In prosecution under Criminal Code, § 215 (Comp. St. § 10385), for use of mails to defraud by sales of corporate bonds all of false representations alleged need not be proved, if proof of lesser number will support finding that scheme existed.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Willard V. Mathews and others were convicted of conspiracy and of using the mails in furtherance of a scheme to defraud, and the named defendant brings error. Affirmed.

Edward P. Smith, of Omaha, Neb. (William A. Schall, Francis S. Howell, and Frank E. Sheehan, all of Omaha, Neb., on the brief), for plaintiff in error.

James C. Kinsler, U. S. Atty., of Omaha, Neb. (Sylvester R. Rush, Sp. Asst. Atty. Gen., on the brief), for the United States.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

BOOTH, Circuit Judge. Plaintiff in error and others were tried and convicted under an indictment charging violation of sections 215 and 37 of the Criminal Code (Comp. St. §§ 10201, 10385). The indictment contained 11 counts. Each of the first 10 charged a scheme to defraud and a separate use of the United States mail for the purpose of executing the scheme. The eleventh count charged a conspiracy to commit the substantive offenses charged in the first 10 counts, and the doing of certain acts to effect the object of the conspiracy. Plaintiff in error was convicted on all counts but the first. He brings this writ of error to the judgment entered, alleging as grounds for reversal: (1) Error in overruling the motion on his behalf for a directed verdict, based on an alleged fatal variance between the charge in the indictment and the proof; (2) error in giving certain instructions by the court to the jury, which, it is claimed, amounted in legal effect to an amendment of the indictment.

[1] For a clearer understanding of these alleged errors, it is necessary to set out excerpts from the indictment and from the charge of the court to the jury. The indictment contained the following:

"That Willard V. Mathews [and others, naming them] * * * did devise a scheme and artifice to defraud, and for obtaining money and property, by means of false and fraudulent pretenses, representations and promises, from a certain class of persons, * * * that is to say, those persons who, by the means hereinafter described, should be induced by the defendants to purchase and pay for the stock, bonds, certificates, and other securities * * * issued or thereafter to be issued by the corporations and banks hereinafter named, * * * and those persons who, by said means, should be induced to loan * * * or invest money * * * to or with the said corporations and banks * * * upon and by means of certain pretenses, representations, and promises hereinafter set forth, to be made by the defendants to said persons; * * * that Willard V. Mathews [and others, naming them] were stockholders, officers, employees, and agents, exercising the complete control * * * of the following named corporations and banks, * * * to wit, the Guaranty Securities Company of Omaha, Neb. [and others, naming them]; * * * and the said scheme and artifice so devised by the defendants * * * was that the said defendants, in the control, management, and direction of the aforesaid corporation and banks, should together with the defendants [naming them] promote, organize, and incorporate * * * a certain other corporation, to be known as the Colonial Timber & Coal Corporation, with headquarters at Charleston, W. Va., the control and management whereof should be acquired and exercised by the defendants; *that said Colonial Corporation * * * should hold itself out as the owner in fee simple of 700,000 acres of coal and timber lands in West Virginia and other States* (italics ours), and should issue bonds in the amount of $2,000,000 purporting to be secured by first mortgage upon 147,000 acres of said land; that the defendants should cause the said bond issue ostensibly to be underwritten and guaranteed by the said Guaranty Securities Companies; * * * that the defendants should cause large amounts of said bonds, and of the stock of the said Colonial Corporation, to be sold and transferred to the corporations and banks hereinbefore mentioned, and, through said banks and corporations as selling agents, should cause other large amounts of said bonds to be sold to the general public, the proceeds of which sales to

the said banks and corporations and to the general public should be appropriated to the use, benefit, and gain of the defendants and of the said Colonial Corporation; that the defendants, without paying any money or giving any other valuable consideration therefor, should cause large amounts of said stock and bonds to be allotted and transferred to themselves, thereby enabling the defendants to sell and otherwise dispose of said stock and bonds for their own gain and profit; that in order to obtain additional money and property, to be appropriated to the use, gain, and profit of the defendants in the operations aforesaid, the defendants should cause the corporations and banks hereinbefore mentioned to issue and sell to the general public large amounts of stock, bonds, certificates, and other securities and evidences of indebtedness, and to solicit and obtain large sums of money in deposits and loans from the public generally; that the false and fraudulent pretenses, representations, and promises, so to be made by the defendants as aforesaid, in pursuance of the said scheme and artifice, and which were by the defendants intended to be understood, believed, and relied upon by the persons so to be defrauded as aforesaid, were as follows, to wit:

\* \* \* \* \*

"That said banks and corporations, and those in the management and control thereof, were not promoters or speculators, but were mortgage and bond bankers, loaning their own funds direct to mortgagors upon improved income-producing real estate; \* \* \* that the bonds issued by the said Guaranty Securities Companies and purporting to be first mortgage bonds were directly and amply secured by deposits with a bonded trustee, or real estate first mortgages upon improved, income-producing farm lands in eastern Nebraska and western Iowa, and by other first mortgages upon improved, income-producing real estate; \* \* \* That each of said banks and corporations had earned, was earning, and would continue to earn large net profits, and that each said bank and corporation possessed a large surplus set aside from net earnings; \* \* \* that each of said banks was a sound financial institution, and had been, was being, and would be conducted according to sound banking principles; \* \* \* that the bonds of the said Colonial Timber & Coal Corporation, in the sum of $2,-000,000, were secured by a first mortgage lien upon 140,000 acres of coal and timber land in the state of West Virginia, *of which the defendants were the owners in fee simple* (italics ours); \* \* \* that in addition to said

140,000 acres, directly secured by said bond issue, *the defendants were the owners in fee simple of 560,000 acres more of such coal and timber land in said state of West Virginia, which was and would be additional security for the said bond issue* (italics ours); that the total assets of the said Colonial Timber & Coal Corporation were of the value, conservatively estimated, of two and one-half times its capital stock and surplus, which said capital stock and surplus amounted to $20,-000,000—which said pretenses, representations, and promises, as the defendants, when so devising said scheme and artifice and at the time of committing the several offenses in this indictment hereinafter mentioned, well knew, were and would be false and fraudulent pretenses, representations, and promises in the particulars following, to wit:

\* \* \* \* \*

"That the said Guaranty Securities Companies, and those in the management and control thereof, were not, and would not be, engaged in the legitimate business usually transacted by mortgage and bond bankers loaning their own funds direct to mortgagors upon improved, income-producing real estate, but in truth and in fact were, and would be, promoters and speculators, engaged for the most part in illegitimate, irregular, and speculative transactions, entirely inconsistent with and foreign to the customary business of mortgage and bond bankers, as the defendants then and there well knew; that the bonds and certificates issued by the said Guaranty Securities Companies, and purporting to be first mortgage bonds and certificates, were not, and would not be, secured by first mortgages upon improved, income-producing farm lands or other real estate in eastern Nebraska and western Iowa, or elsewhere, but in truth and in fact the first mortgages held by the said companies which were, or could be, security for the payment of said bonds, were inconsiderable as compared with the total amount of the bonds and certificates so issued, and wholly insufficient as security therefor, and such mortgages as were ostensibly deposited in trust as security for said bonds and certificates were, and would be, misappropriated, dissipated, and diverted to other uses, and the said bonds and certificates were, and would be, wholly devoid of safety, as the defendants then and there well knew; \* \* \* that said banks and corporations had neither of them earned, nor would they earn, any net profits, nor did they, or would they, either of them, possess a surplus set aside from net earnings, but in truth and in fact there were and would be no

earnings from which a surplus could be set aside, and no earnings sufficient to pay interest upon the bonds and certificates issued by said corporations and banks, respectively, or from which dividends had been, or could be, legitimately paid upon the stock of said corporation and banks, and any such dividend that had been or should be, paid upon said stock was, and would be, paid from capital, as the defendants then and there well knew; * * * that the said Colonial Timber & Coal Corporation was not, nor would it be, the owner in fee simple of 700,000 acres of coal and timber land in the state of West Virginia or elsewhere, nor were or would its bonds in the sum of $2,000,000, or in any other amount, be secured by deed of trust of 147,-000 acres or any quantity of such land to which the said Colonial Corporation had, or would have, any valid or merchantable title or claim whatever, but in truth and in fact the said Colonial Corporation was not, nor would it be, the owner in fee of any land or timber and coal land in West Virginia or elsewhere, and any claim of title set forth by it or any of its incorporators or promoters to any such land was, and would be, wholly speculative, fictitious, and fraudulent, and the said bonds were, and would be, wholly devoid of security, as the defendants then and there well knew; that said Colonial Corporation did not, and would not, have paid-up capital and surplus in the sum of $20,000,000, nor did it, or would it, have assets of the value of two and one-half times said sum, but in truth and in fact the said Colonial Corporation had and would have no paid-up capital or surplus whatever, and was, and would be, wholly without assets of any value whatsoever, as the defendants then and there well knew."

On the trial the evidence tended to prove that the alleged title to the West Virginia lands was first taken in the name of one of the defendants, to be conveyed by him to the Colonial Timber & Coal Corporation. There was no proof that the defendants represented that they owned the land. There was evidence tending to prove that the Colonial Timber & Coal Corporation was represented to be the owner of the land. There was thus a seeming antagonism between the allegations of the indictment, italicized above, and there was a variance between the allegations that defendants represented that they were the owners of the land and the proof that the Colonial Timber & Coal Corporation was represented as the owner. The court, in view of this situation, denied a motion for an instructed verdict for fatal variance, and in its charge to the jury gave the following instructions:

"Then follow two alleged representations, gentlemen, in the indictment which must be treated as surplusage. Either through mistake or inadvertence or in some way the next two paragraphs of the indictment are at variance with the general tenor and purport of the indictment, and apparently do not reflect the true thought of the grand jury, and should be disregarded entirely by you and treated by you as surplusage when you go over this indictment which you will take out with you. It is said that those representations to be made, that the bonds of the Colonial Timber & Coal Corporation were secured by a first mortgage lien upon 140,000 acres of coal and timber land in the state of West Virginia, of which the defendants were the owners in fee simple, and that allegation of that paragraph of the indictment are surplusage and should be disregarded.

"The next paragraph the same way, that paragraph reading as follows: 'That in addition to said 140,000 acres, directly secured by said bond issue, the defendants were the owners in fee simple of 560,000 acres more of such coal and timber land in said state of West Virginia, which was and would be additional security for the said bond issue.' That allegation should be disregarded as surplusage, because the word 'defendants' is used in each of those paragraphs where such proof as there is on that subject related to the Colonial Timber Company and not to the defendants."

[2] The question of surplusage and the question of variance in criminal procedure, while quite distinct from each other, may yet be closely related. The former has been variously defined as allegations of matter wholly foreign and impertinent to the cause; unnecessary averments in an indictment; any allegation without which the pleading would yet be adequate. Wharton Crim. Evid. (10th Ed.) § 138; United States v. Noveck, 271 U. S. 201, 46 S. Ct. 476, 70 L. Ed. 904; State v. Whitehouse, 95 Me. 179, 49 A. 869; State v. Watson, 141 Mo. 338, 42 S. W. 726.

[3] Variance is a difference or disagreement between the essential parts of a legal proceeding, that to be effectual must agree with each other. In its common form in criminal procedure it is a disagreement between the allegations of the indictment and the proof. This disagreement must be in some matter which in point of law is essential to the charge. Wharton Crim. Evid. (10th Ed.) § 90; Mulligan v. United States, 120 F. 98, 56 C. C. A. 50 (C. C. A. 8); State v. Wadsworth, 30 Conn. 55, 57.

[4] Tests of fatal variance are: Was de-

fendant misled? Will defendant be protected against a future proceeding? Bennett v. United States, 194 F. 630, 114 C. C. A. 402; affirmed 227 U. S. 333, 33 S. Ct. 288, 57 L. Ed. 531. Or as stated in Harrison v. United States, 200 F. 662, 673, 119 C. C. A. 78, 89: "Upon the question of variance between indictment and proofs, the controlling consideration should be whether the charge was fairly and fully enough stated to apprise defendant of what he must meet, and to protect him against another prosecution, and whether those particulars in which the proof may differ in form from the charge support the conclusion that respondent could have been misled to his injury."

These principles and distinctions were recognized and clearly stated by Justice Story in the early case of United States v. Howard, Fed. Cas. No. 15,403. He said: "Two questions generally arise. The first is, what allegations must be proved, and what may be disregarded in evidence? The second is, what is sufficient proof of allegations, which cannot be disregarded in evidence? The former includes the consideration of what constitutes mere surplusage, in an indictment; the latter what properly constitutes variance."

Though the two questions are distinct, yet they both often arise in the same case and in reference to the same subject-matter. In the case last cited the indictment charged that on board a certain ship lying within the jurisdiction of a foreign state, the ship belonging to David R. Greene, Dennis Wood, *William* Nye, and Clement P. Covell, citizens of the United States, defendant Howard did assault one Stanton. The proof showed that the name of one of the owners was *Willard* Nye, and not *William* Nye. The question of variance and the question of surplusage were both raised. The tests of surplusage and of material variance were stated by Justice Story as follows:

"The material parts which constitute the offense charged must be stated in the indictment, and they must be proved in evidence. But allegations not essential to such a purpose, which might be entirely omitted without affecting the charge against the defendant, and without detriment to the indictment, are considered as mere surplusage, and may be disregarded in evidence. But no allegation, whether it be necessary or unnecessary, whether it be more or less particular, which is descriptive of the identity of that which is legally essential to the charge in the indictment can ever be rejected as surplusage. * * * In regard to the other question, what is sufficient proof of allegation, which cannot be disregarded as evidence, or, in other words,

what constitutes a material variance in proof from the charge in the indictment, the general rule is that a variance between the indictment and the evidence is not material, provided the substance of the matter be found."

Applying the principles thus announced to the facts of that case, the court announced its conclusion as follows: "I think the names of the owners may be either rejected as surplusage, or the variance as to the proof was as to a fact purely immaterial."

[5] Turning again to the case at bar, were the allegations that defendants were represented to be the owners of the West Virginia lands surplusage? The offense denounced by section 215 is the use of the post office establishment in the execution of a scheme to defraud; while the scheme itself must be sufficiently set out to acquaint defendant with the particulars of it, yet the scheme need not be set forth with that particularly which would be required, if the scheme was the gist of the offense. Brooks v. United States, 146 F. 223, 227, 76 C. C. A. 581 (C. C. A. 8); Gould v. United States, 209 F. 730, 126 C. C. A. 454 (C. C. A. 8); Sandals v. United States, 213 F. 569, 130 C. C. A. 149; Mounday v. United States, 225 F. 965, 140 C. C. A. 93 (C. C. A. 8); McClendon v. United States, 229 F. 523, 143 C. C. A. 591 (C. C. A. 8); Gardner v. United States, 230 F. 575, 144 C. C. A. 629 (C. C. A. 8); Chew v. United States, 9 F. (2d) 348, 351 (C. C. A. 8).

[6] The gist of the offense is the use of the mails in execution of the scheme to defraud. It is essential to prove the existence of the scheme. The scheme may be made up of many elements. If so, it is necessary to prove a sufficient number of the elements of the scheme, so that the jury may be justified in finding the existence of the scheme. But no particular element need be proven, if the other elements, when proven, are sufficient to establish the scheme.

In the instant case one of the elements of the scheme was the formation of the Colonial Timber & Coal Corporation; and one of the subelements was the making of certain representations as to the ownership of the lands designated as security for the bonds issued by that corporation. This subelement of representation as to the ownership of the lands was not vital to the scheme. If the bonds issued by the Colonial Timber & Coal Corporation were in fact secured by the lands in question, it would not be vital whether the title stood in the defendants or in the corporation. It may perhaps be doubted whether even the issuance of bonds by the Colonial Timber & Coal Corporation was vital to the

existence of the scheme. There were other elements, such as the issuance and sale of stocks, bonds, and certificates by the Guaranty Securities Companies and the banks mentioned, which alone, if proven, might well be held to sufficiently show the scheme to defraud.

Indeed, so distinct were these other elements from the issuance of Colonial Timber & Coal Corporation bonds that plaintiff in error took the position at the trial that there were several distinct schemes involved, and moved that the government be compelled to elect which one of the alleged schemes it would rely upon. This alleged representation as to ownership, not being of the essence of the offense, could properly be considered surplusage; and if the remaining elements alleged were sufficient to prove a scheme substantially the same as the one alleged, the rejection of the surplusage would not constitute an amendment to the indictment. Instances of disregarding surplusage in an indictment are not uncommon. United States v. Noveck, supra; Fall v. United States, 209 F. 547, 126 C. C. A. 369 (C. C. A. 8); Chambers v. United States, 237 F. 513, 522, 150 C. C. A. 395 (C. C. A. 8); Silkworth v. United States (C. C. A.) 10 F.(2d) 711, 715; Kercheval v. United States, 12 F.(2d) 904 (C. C. A. 8).

[7, 8] Was there a fatal variance? The proof must establish the scheme substantially as alleged in the indictment (Brown v. United States, 146 F. 219, 76 C. C. A. 577 [C. C. A. 8]), yet variance in matters not of vital importance is not fatal. In Farmer v. United States, 223 F. 903, 139 C. C. A. 341, certiorari denied 238 U. S. 638, 35 S. Ct. 940, 59 L. Ed. 1500, the variance claimed between the allegation and the proof as to the number of the parties who entered into the original scheme to defraud, was held not fatal.

In United States v. Smith (D. C.) 222 F. 165, the variance claimed between the allegation and the proof as to the truth of a representation that defendant was a physician, was held not fatal. The court in its opinion said: "Counsel for the United States were following good principles of pleading in characterizing each element in the fraudulent scheme as false in fact, as well as fraudulent in use. By this the burden is not assumed of proving every averment of falsity, as well as the averment of fraud. The case is within the principle, the soundness of which is not controverted by counsel for the defendant, that the consonance of probata and allegata does not require that every averment in the indictment should be proved in order to warrant a conviction. It is enough if so much of the charge be proved as constitutes an offense against the law, and the offense for the commission of which the defendant stands indicted." See also United States v. Howard, supra; Rieger v. United States, 107 F. 916, 47 C. C. A. 61 (C. C. A. 8); Grand Rapids & I. Ry. Co. v. United States, 212 F. 577, 129 C. C. A. 113.

We think the variance in the case at bar comes well within the tests in the cases cited, and was not a fatal variance. The cases cited by counsel for plaintiff in error are not, when properly analyzed, opposed to the foregoing conclusions. Ex parte Bain, 121 U. S. 1, 7 S. Ct. 781, 30 L. Ed. 849, involved a change in the indictment which went to the gist of the offense. It was a change in the charging part of the indictment by striking out certain words. In the case at bar nothing was stricken from the indictment. The jury were simply told to disregard certain allegations not going to the gist of the offense, as surplusage. Ex parte Bain does not prohibit this. See Hall v. United States, 168 U. S. 632, 639, 18 S. Ct. 237, 42 L. Ed. 607; Goto v. Lane, 265 U. S. 393, 44 S. Ct. 525, 68 L. Ed. 1070; United States v. Noveck, supra; Silkworth v. United States, supra.

Another case relied upon by plaintiff in error is Naftzger v. United States, 200 F. 494, 118 C. C. A. 598 (C. C. A. 8). That case simply holds that an unnecessary allegation, which, however, was descriptive of the identity of something which was legally essential to the charge, could not be considered surplusage. The case is merely an instance under the rule announced by Justice Story in United States v. Howard, supra. United States v. Denicke (C. C.) 35 F. 407, relied upon by plaintiff in error, is another instance of the same kind. Brown v. United States, supra, also relied upon, was a case where the proof failed to establish the scheme even substantially as alleged. No such claim is or could be made in the case at bar.

Our conclusions are: That the challenged portion of the charge of the court did not constitute an amendment to the indictment; that the allegations in controversy, not being in reference to a necessary ingredient of the offense, could be considered surplusage and be disregarded; or that the variance between allegation and proof was as to an immaterial fact, and therefore not fatal.

[9] In considering this case, we have dealt mainly with the questions of surplusage and variance, because those were the questions presented by counsel. But there is another ground upon which the judgment in the case at bar should be affirmed. It is this: In cas-

es involving use of the mails in execution of a scheme to defraud, where a number of false representations are alleged, as in the present case, tending to prove the existence of the scheme, it is not necessary to prove all of the false representations charged, if proof of a lesser number lays a sufficient foundation for a finding by the jury that the scheme in substance was in fact devised. Nash v. United States, 229 U. S. 373, 33 S. Ct. 780, 57 L. Ed. 1232; United States v. Smith, supra; Myers v. United States, 223 F. 919, 925, 139 C. C. A. 399; Chambers v. United States, supra; Bergera v. United States, 297 F. 102, 112 (C. C. A. 8); Silkworth v. United States, supra.

Judgment affirmed.