## RICHARDS v. UNITED STATES.
### No. 2734.

Circuit Court of Appeals, First Circuit.
Jan. 31, 1933.

Haven Parker, Asst. U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U. S. Atty., of Boston, Mass., on the brief), for the United States.

Before BINGHAM, WILSON, AND MORTON, Circuit Judges.

MORTON, Circuit Judge.

The defendant Richards was indicted with two other persons for using the mails in a scheme to defraud. Criminal Code § 215 (18 USCA § 338). After a trial lasting ten days, the jury returned a verdict of guilty against him and his codefendant Seager. The assignments of error present certain rulings of evidence made during the trial, and certain comments on facts by the presiding judge which, it is contended, were unfairly prejudicial.

The government's evidence warranted a belief that Richards took a leading part in organizing and carrying on, under the names United Investment Assurance Trust, and Founders' Securities Trust, a carefully devised scheme to obtain money fraudulently by the pretended purpose of investing it safely; and that he used the mails in furtherance of said scheme. The defense was that the enterprises were legitimate and were carried down in the collapse of security values which began in the autumn of 1929. On a question of this sort, it is obvious that the evidence must take a wide range, and that much must be left to the discretion of the trial judge. It is but seldom that a single piece of evidence in a long and complicated case can be said to be of such outstanding and influential character as to warrant setting aside the verdict, even if as a matter of strict law the evidence appears to have been improperly admitted—especially in view of the statutory provision requiring courts to give judgment "without regard to technical errors * * * which do not affect the substantial rights of the parties." 28 USCA § 391. See Myers v. U. S. (C. C. A.) 223 F. 919, 925.

The first assignment of error needs no extended comment. The written notice admitted over the defendant's objection came from the papers of the concerns with which the defendant had been associated. If it had evidential value we think it was admissible (Livezey v. United States, 279 F. 496, 499, C. C. A. 5th); if not, the defendants were not harmed—as their counsel in effect concede. As to the second assignment we think the mortgage on the furniture was properly

BINGHAM, Circuit Judge, dissenting.

———

Asa S. Allen, of Boston, Mass. (Willard Allen & Mulkern, of Boston, Mass., on the brief), for appellant.

admitted. It constituted part of the general picture of the concerns under scrutiny at their formative stage with which the defendant Richards was concerned.

As to the third assignment, this relates to the admission against the defendant of a check for $600 drawn by one Bohlman and payable to the Founders' Securities Trust. An accountant, who examined the books of this trust after the failure, was called by the government and testified to book entries which warranted the inference that the sum represented by this check was paid out by the Founders' Trust to the defendant Richards. Bohlman testified that he gave the check in payment for shares, that he could not say whether he bought the shares from the trust or from Richards personally. The check standing alone is without significance. Its probative value comes from the transaction of which it was part. In view of the vagueness with which this transaction was described, we do not think it furnished any evidence of fraud, and we think that the check was improvidently admitted. The check per se did not injure the defendant's case; there was nothing sinister about it. It was open to the defendant to point out that the transaction to which it appeared to relate was not shown to have been dishonest. It would be going much too far to hold that the improvident admission of a paper harmless per se requires the granting of a new trial.

As to the fourth assignment, the remarks by the court which were objected to were made at a conference between court and counsel at the bench. It was not intended that the remarks should be heard by the jury; and it does not appear that they were heard by them.

The fifth assignment relates to a substantial transaction whereby the Founders' Trust paid Richards $35,705 for warrants for "founders shares" so called in the other trust. Richards was connected with the management of the purchasing trust from its inception; he was elected president of it in 1927. A transaction whereby he sold property to it would certainly call for explanation by him. The facts surrounding this transaction do not clearly appear in the record before us; it is not stated who represented the Founders' Trust in making the purchase, nor in what way, if at all, its interests were properly protected. The District Judge may have taken the view that the purchase was, in effect, the use of trust funds by a trustee to purchase from himself, and as such was prima facie fraudulent. If the transaction was in fact proper, it was open to Richards to introduce evidence to that effect. But no such evidence appears in the record. In connection with the other evidence we think this might well be considered as throwing light on the manner in which Richards dealt with the two trusts, in the management of which he was so influential.

[4] The sixth assignment of error relates to a comment by the court during the trial: "In other words the thing was in a mess. I think we agree to that." This remark referred to the books of account, as to which testimony was then being given. The presiding judge afterwards became convinced that the books had been properly kept and that his remark was erroneous. He withdrew it in the charge in the most complete and unqualified manner. "I said in the course of the trial that the books were in a mess. In that I was mistaken. The books were not in a mess." Certainly the defendant was not harmed by such a comment so unequivocally withdrawn.

The seventh assignment of error relates to the refusal to let a witness called by the government testify as to what his *"theory"* was about a certain discrepancy which appeared to exist in the books. The presiding judge said that he did not want theories, he wanted facts; and he excluded the inquiry. The defendant did not pursue the matter with the witness, nor attempt to elicit facts in explanation of the discrepancy. Plainly the question as put was inadmissible because it opened the door for the witness' guess as to the explanation of the apparent discrepancy. In refusing to consider the question in a broader aspect we cannot say that the presiding judge was wrong.

Assignments eight and nine relate to the admission of the bankruptcy records. While not waived they have not been argued. We see no error in the rulings. The tenth assignment relates to the admission of certain records from a case in the superior court in Massachusetts. The case related to a receivership proceeding in that court against S. J. Richards & Co. It is urged for the defendant that these records were not authenticated as prescribed in the statutes of the United States, because they were attested by an assistant clerk and there was no supporting certificate by the judge. 28 USCA § 687. There appears no reason to doubt the accu-

racy of the copies; and they would have been admissible as they stood in the state courts. If such a pure technicality was to be insisted on, the ground of objection should have been explicitly brought to the attention of the court and the adverse party, in order that the record might be corrected. Moreover, the record appears to have been properly admitted. Turnbull v. Payson, 95 U. S. 418, at page 422, 24 L. Ed. 437. The objection that the identity of the S. J. Richards on trial with the S. J. Richards of the state court record was not shown ought also to have been specially stated. While the requirement that parties objecting to evidence shall state the grounds of their objection is often disregarded when such grounds are apparent and are understood by the trial judge and the opposing party, it is designed to meet just such situations as are here presented. Moreover, there was evidence warranting the finding that the defendant Richards and "S. J. Richards" of S. J. Richards Company were the same person. The furniture used by the trust came from S. J. Richards & Co. Miss Powers, one of the defendants, testified: "That she had worked for Mr. Richards personally or S. J. Richards & Co. and for the Founders Securities Trust for about ten years; that she worked with Mr. Richards as a secretary on the plans for the formation of the two trusts * * * from 1922 until the trust started to do business in 1927." The fact that the record from the state court did not state certain facts was no ground for refusing to admit it for the facts which it contained.

◼ The eleventh assignment of error relates to the refusal of the court to give certain requests for rulings. The first two while not waived have not been argued. The first of them, viz., for a directed verdict, was properly refused. The second, relating to reasonable doubt, was sufficiently covered by the charge. The third, viz., that the statement in the circulars put out by the defendant Richards must be read in connection with all the other written matter in the circular, and that although some words might be untrue or inaccurate the question was whether the circular as a whole evidenced an intent to defraud, was to some extent at least covered in the charge. The judge said: "They all (the different counts of the indictment), however, depend on the same state of facts, whether these men, or either of them, did send something through the mails knowing that it was false and intending that the peo-

ple who received these mailed messages should act on them." The jury were also instructed: "You must be satisfied that these statements were made fraudulently, and that means that they were false, and that the people, either Mr. Richards or Mr. Seager, or both of them, knew that they were false. If a man makes a statement such as these here knowing that it is false, then that is fraud in law." Considering the length of the trial, during which the jury were becoming familiar with the issues which they were to try, we see no reason to doubt that they understood clearly the law on this point.

◼ The twelfth assignment relates to certain comments on the facts made by the presiding judge in his charge. He criticized the audit of the books of the trust saying: "Mr. Ashcroft never did one single, solitary thing except to ask Mr. Richards as to whether the thing was valuable,—absolutely the wrong way for an auditor ever to audit books." On cross-examination Ashcroft had testified that "his method of checking up on the accounts receivable was to inquire of Mr. Richards and Mr. Seager as to them"; that "Richards had stated to him that the accounts receivable were good; that he took Mr. Richards' word for it." On his direct examination, however, Ashcroft had testified to a somewhat more thorough examination, although even there he said that he relied on Miss Powers, one of the defendants, and on documents furnished him by Richards and Seager; that he examined the securities on hand and checked the cash with the banks. While the judge's statement was not strictly correct, no request was made to him to correct it. The jury were cautioned that what the judge said to them about facts was not binding on them, and should not be accepted unless they agreed with him. This assignment of error ought not to be sustained.

◼ Assignments 13, 14, and 15 also relate to comments on facts by the presiding judge in his charge. The thirteenth assignment relates to further criticism by the judge of the Ashcroft audit. Outside of an inversion of figures, 64,000, in place of 46,000 —an error which may have been made by the judge, or by some other person in making up the record, and which is obviously immaterial—no complaint is made that the facts were misstated. Apparently, the audit showed so-called *profits* of $46,000 on sales which had never been made. The judge's comment was: "They say you should not count your chickens before they are hatched. I should

say this is counting your chickens before you ever started in to raise hens." The criticism was sharp but not unfair. The fourteenth assignment relates to comment by the judge about a book put out as advertising matter with the knowledge of the defendants. The judge characterized it as "learned nonsense," as "a thing very cleverly got up, as I say, to impress the ignorant." But he immediately added: "But it is all with you (the jury) and I will not say that either Mr. Richards or Mr. Seager did not believe in that stuff." We have examined the advertising matter referred to, and we are not prepared to say that the comment on it was not justified, especially when accompanied by a caution that the defendants might have believed it. The reference in the charge to Frankenstein which is objected to in assignment 15 may have been incorrect in the literary allusion, but we do not perceive that it was inimical to the defendants.

The final complaint of the defendant is that the charge was argumentative and unfair. No objection was made on this ground at the conclusion of the charge, and no exception to the charge on this ground was taken. There is no assignment of error raising this question. We are urged by counsel for the defendant to consider this question under the doctrine of "plain error though not assigned." Whether the charge was argumentative and unfair is in itself an arguable question. The error cannot be said to be plain. Moreover, if the objection had been made to the judge at the trial, that the charge was one-sided, he might well have modified it. The charge as a whole is by no means so strongly against the defendants as the excerpts from it, which were excepted to, might make it appear. The judge told the jury that: "Every presumption, every doubt whatever must be resolved in favor of the defendants; and you must also consider the question of the difference in the state of affairs when this thing was started. Nineteen twenty-seven was a boom time, and the people might very likely then have honestly thought that certain things would go through which they would not possibly think would go through now." Naturally, the parts of the charge which the defendants have brought forward for review are those which bore heavily against them, and they have said nothing about the other parts of the charge.

The judgment of the District Court is affirmed.

BINGHAM, Circuit Judge, dissents.